IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SPS LIMITED PARTNERSHIP, LLLP, et al | * |
| v. | * Civil No. JFM-14-589 |
| SPARROWS POINT, LLC, et al | * |

**MEMORANDUM**

Plaintiffs SPS Limited Partnership LLLP and SPS 35, LLC ("SPS") bring this lawsuit against defendants Sparrow Point, LLC and Sparrow Point Terminal, LLC ("SP Terminal") (collectively "defendants"), seeking recovery under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*; and four Maryland common law claims—negligence, trespass, nuisance, and strict liability. SPS alleges that defendants have caused "ongoing and continuous discharge of pollutants" from their "Steel Mill Site" onto SPS's "Shipyard Site" in Sparrows Point, Maryland. Pending is a partial motion to dismiss filed by SP Terminal which argues that SPS's state law claims are barred by issue preclusion (collateral estoppel) and, alternatively, Maryland's applicable statute of limitations. (ECF No. 42).

The motion is fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the motion is denied.

**BACKGROUND**

This dispute involves the alleged continuous flow of hazardous chemicals from the Steel Mill Site onto the adjacent parcel of land referred to as the Shipyard Site. SPS acquired title to the Shipyard Site in early March 2004, which constitutes approximately 131.5 acres of dry land

and a 13.4 acre excavated dry dock. (*Id.* ¶¶ 18–19). The Steel Mill, now owned and operated by SP Terminal, surrounds the Shipyard Site on three sides. Originally both sites were owned by the Bethlehem Steel Corporation ("BSC") but after a series of transactions both parcels became owned by independent parties. In February 1997 the federal EPA and Maryland Department of the Environment ("MDE") sued BSC for violating federal and state environmental law by causing "a release of hazardous wastes . . . substances and/or . . . constituents into the environment at and/or from the Steel Mill Site" including benzene, naphthalene, toluene, arsenic and lead. (*Id.* ¶¶ 21, 24–25). BSC entered into a Consent Decree with the EPA and MDE on October 8, 1997 pursuant to which BSC "agreed to investigate and address certain environmental conditions at the Steel Mill Site and the Shipyard Site." (*Id.* ¶ 22).[1] The EPA removed the Shipyard Site from the Consent Decree in June 2006, but the Steel Mill Site remains bound by it. (*Id.* ¶ 23).

When SPS purchased the Shipyard Site in 2004 it "inherited an NPDES [National Pollutant Discharge Elimination System] permit that had been in draft form for a number of years." (*Id.* ¶ 32). As part of that permit, the amount of benzene associated with the "dewatering/trim pumps at the Graving Dock" on the Shipyard Site was specifically limited. *Id.* In 2007 the MDE asked SPS to sample the benzene levels at its "underdrain pumps," after which the parties finalized a revised NPDES permit which included a benzene limit at the underdrain pumps effective February 1, 2010. (*Id.* ¶¶ 33–35). In order to comply with the benzene limit at the underdrain pumps, SPS installed a wastewater treatment system which "has amounted to more than $700,000 and is expected to cost an additional $20,000 per month in operating and maintenance costs." (*Id.* ¶ 38). SPS attributes the continued elevated benzene levels at the

---

[1] Although SPS claims the hazardous discharges continue to flow onto its land, it is unclear whether the Steel Mill site is still actively conducting operations.

Shipyard Site to discharges from the Steel Mill, and alleges that despite the Consent Decree apparently remaining in force, "the discharges continue to flow onto the Shipyard Site." (*Id.* ¶ 37).

On September 17, 2010, SPS filed a lawsuit against several defendants including the owner and operator of the Steel Mill at that time—Severstal Sparrows Point, LLC—alleging the identical conduct and causes of action ("the *Severstal* case") as it does now.[2] Defendants filed a motion to dismiss which I granted in part on July 5, 2011, dismissing SPS's four claims under Maryland law (negligence, trespass, nuisance, and strict liability) for falling outside of the applicable three-year statute of limitations. *SPS Ltd. P'ship v. Severstal Sparrows Point, LLC*, 808 F. Supp. 2d 794, 814–815 (D. Md. 2011). I held that SPS was on inquiry notice, if not actual notice, of the alleged hazardous discharge from the Steel Mill Site on February 22, 2014 because various public documents, including an environmental assessment that SPS attached to its VCP application, indicated possible benzene contamination of the Shipyard Site. *Id.* On July 31, 2013, I signed a settlement order proposed by the parties which dismissed the case.

SPS filed the complaint in the present case on February 28, 2014 against several defendants, including Sparrows Point, LLC (who had acquired the Steel Mill in 2012). After SP Terminal purchased the Steel Mill from Sparrows Point in 2014, SPS filed a second amended complaint which named it as a defendant, retained Sparrows Point, LLC, and dismissed all other defendants. SP Terminal has filed a partial motion to dismiss (ECF No. 42) which seeks dismissal of SPS's four claims under Maryland common law.

---

[2] SPS also included a claim under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), which is not present in this case.

**STANDARD**

When ruling on a motion brought under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (internal citations and quotation marks omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

**ANALYSIS**

SP Terminal argues that SPS's state-law claims against it are barred by issue preclusion and the applicable three-year statute of limitations. Because argument neither is persuasive, SP Terminal's motion to dismiss is denied. SPS may only recover damages, however, for injuries sustained within a three-year period prior to filing its complaint.

**I.   SPS's Maryland Claims Against SP Terminal Are Not Barred By Issue Preclusion.**

Issue preclusion, historically referred to as collateral estoppel, "prevents the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate." *Sensormatic Sec. Corp. v. Sensormatic Elects. Corp.*, 455 F. Supp. 2d 339, 410 (D. Md. 2006) (quoting *Ramsay v. U.S. Immigration & Nat. Serv.*, 14 F.3d 206, 210 (4th Cir. 1994) (internal quotation marks omitted)). Issue preclusion applies under Maryland law if four elements are satisfied—

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
> 2. Was there a final judgment on the merits?
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Shader v. Hampton Imp. Ass'n, Inc.*, 94 A.3d 224, 238 (Md. Ct. Spec. App. 2014) (quoting *Pat Perusse Realty Co. v. Lingo*, 238 A.2d 100 (Md. 1968)). Maryland has relaxed the traditional mutuality requirement and now recognizes defensive non-mutual issue preclusion. *See, e.g.*, *Burruss v. Bd. Of Cnty. Commis. of Frederick Cnty.*, 46 A.3d 1182, 1194 (Md. 2012). Under this variation, a defendant can cite an issue decided against the plaintiff in a prior case even though

the defendant was not a party to that prior adjudication. The defending party bears the burden to prove this affirmative defense.

SP Terminal argues that SPS's state-law claims are barred by issue preclusion because I ruled in 2011 that those same claims, albeit against different defendants, were barred by the applicable three-year statute of limitations. *See Severstal Sparrows Point, LLC*, 808 F. Supp. 2d at 814–815. SPS responds by contending that issue preclusion is inapplicable because SP Terminal has not proven the first two of the four elements outlined above. Because I agree with SPS that SP Terminal cannot meet its burden as to the first element, I hold that issue preclusion is not appropriate in this case.

The adjudication of an issue cannot have a preclusive effect on a later case unless the issues in both disputes are identical. Common examples of "identical issues" include a driver's negligence in a negligence action and a patent's validity. If the driver is found negligent in one lawsuit and sues a new defendant or the patentee alleges infringement of a patent previously held invalid, the new defendants in both cases can cite the prior rulings in their defense (provided that the other elements are also satisfied). This helps ensure consistency and promotes efficiency. Here, however, SP Terminal is seeking to have a prior ruling on a statute of limitations defense be applied to bar SPS's claims. Unlike negligence or patent invalidity, determining whether a complaint is timely depends on the specific factual context in which the statute of limitations applies. *See Allstate Ins. Co. v. Cherry*, No. ELH-11-2898, 2012 WL 1425158, at *9 (D. Md. Apr. 23, 2012) (citing *Pohlmann v. Bil-Jax, Inc.*, 176 F.3d 1110 (8th Cir. 1999)). *Cherry* involved a different jurisdictional defense, personal jurisdiction. Although the *Cherry* court ultimately held that a previous dismissal for lack of personal jurisdiction precluded the plaintiffs' second lawsuit, the court cited from *Pohlmann* the fundamental question at the core of the

6

analysis—whether the "critical jurisdictional facts have changed in the interim." *Pohlmann*, 176 F.3d at 1112. The *Cherry* court held that they did not. 2012 WL 1425158, at *10 ("[T]here is no suggestion that the factual basis for personal jurisdiction has changed between *Cherry I* and the initiation of this case a few months later.").

Here, however, at least one "critical jurisdictional fact" *has* changed since SPS filed its first lawsuit against the *Severstal* defendants in 2010—the Steel Mill Site is owned by a new entity. When SPS filed the complaint in the earlier action SP Terminal had no control or ownership of the Steel Mill Site, and accordingly could not have been liable for the hazardous discharges at that time. *See Burns v. Bechtel Corp.*, 66 A.3d 1187, 1191 (Md. Ct. Spec. App. 2013) (holding that a party was not liable under strict premises liability because it "was not in actual possession and control . . . when the injury occurred"). My prior dismissal of SPS's four claims under Maryland law based on the statute of limitations, therefore, applied exclusively to those claims against the *Severstal* defendants and their alleged conduct. Only when SP Terminal purchased the Steel Mill Site in 2014 did it become potentially liable for failing to comply with applicable law. Accordingly, the statute of limitations on any unlawful conduct by SP Terminal began to run *after* it purchased the Steel Mill Site. The fact that SPS waited too long to file a complaint against the *Severstal* defendants is a separate issue from whether SPS waited too long to file a complaint against SP Terminal.

Finally, even though SPS's complaints against the *Severstal* defendants and SP Terminal are virtually indistinguishable, their facial similarity is not a dispositive factor. As will be discussed further below, SPS alleges the continued discharge of hazardous chemicals, chiefly benzene, onto its Shipyard Site from SP Terminal's Steel Mill Site. I find that SPS has

sufficiently alleged injuries proximately caused by SP Terminal's actions, or lack thereof, with respect to preventing the continuous and ongoing migration of benzene.

In conclusion, the "issue" of whether SPS's claims in the *Severstal* case were timely is not identical to the issue of whether its claims against SP Terminal are barred here.[3]  Absent this first critical element, issue preclusion is inapplicable.[4]  I now turn to whether SPS's claims against SP Terminal are also barred by the applicable statute of limitations irrespective of issue preclusion.

**II. SPS's Maryland Claims are Not Barred by the Statute of Limitations.**

SP Terminal also argues that SPS's claims are barred by Maryland's three-year statute of limitations, Md. Code Ann., Cts. & Jud. Proc. § 5-101.  I reject this argument for two reasons—the limitations period only began once SP Terminal acquired the Steel Mill Site and the "continuing harm" theory of tolling applies to this case in light of a recent decision by the Maryland Court of Appeals.

First and most simply, the earliest the statute of limitations could have started as to SPS's claims against SP Terminal is when SP Terminal purchased the Steel Mill Site in 2014.  Although I did hold that SPS's claims against the *Severstal* defendants accrued in February 2004, that finding does not address SPS's (admittedly identical, save one count) claims against SP Terminal who was not in any way involved at the Steel Mill Site at that time.  It is clear under Maryland law that a plaintiff on notice of a potential injury must investigate "all potential claims *and all potential defendants with regard to the injury*." *Doe v. Archdiocese of Wash.*, 689 A.2d

---

[3] Because all four elements are necessary for issue preclusion to apply, I need not decide whether my prior dismissal of SPS's state claims against the *Severstal* defendants is "final" despite the subsequent settlement and dismissal of the entire dispute.

[4] Another related affirmative defense is claim preclusion, or res judicata.  SP Terminal has not raised that defense and explicitly reserves its right to do so after discovery regarding the terms of the settlement between SPS and the *Severstal* defendants.  (ECF No. 42-1 at p. 4 n.2).

634, 644 (Md. Ct. Spec. App. 1997) (emphasis added). In 2004 SP Terminal was not a potential defendant because it owed no duty to SPS or any other entity involved at the Shipyard and Steel Mill sites. By the time SP Terminal purchased the property, SPS had already filed the present case against the former owner of the Steel Mill Site, Sparrows Point, LLC. SP Terminal was added as a defendant in the second amended complaint, which "relates back to the date of the original pleading." *Wonasue v. Univ. of Md. Alumni Ass'n*, 295 F.R.D. 104, 110 (D. Md. 2013) (quoting Fed. R. Civ. P. 15(c)). Accordingly, the only logical conclusion is that SPS's claims against SP Terminal did not arise—and the three-year clock did not start—until SP Terminal purchased the Steel Mill Site in 2014.

Second and related, even if SPS's claims against SP Terminal accrued in February 2004, the "continuing harm" theory would toll the statute of limitations because this is a case "where there are continuing violations." *Litz v. Md. Dept. of Env't*, 76 A.3d 1076, 1086 (Md. 2013). As a preliminary note, I considered and rejected this theory in the *Severstal* case. *See Severstal Sparrows Point, LLC*, 808 F. Supp. at 815 n.17. I cited *MacBride v. Pishvaian*, 937 A.2d 233 (Md. 2007) for the proposition that the "continuing harm" theory does not apply if "the potential plaintiff sooner knew or should have known of the injury or harm." *Id.* at 241. Because I held that SPS was on inquiry notice in February 2004, I deemed the "continuing harm" theory inapplicable. Subsequent to my ruling, however, *MacBride* was abrogated by the *Litz* court in 2013. Specifically addressing the "sooner knew or should have known of the injury of harm" phrase from *MacBride*, the *Litz* court characterized the phrase as dictum, likely misleading, and stated it "is hereby disavowed." *Litz*, 76 A.3d at 1090 n.9. The *Litz* court reaffirmed the purpose of the "continuing harm" theory as encompassing a situation where each new "repetition of the

wrong creates further liability . . . and a new statute of limitations begins to run after each wrong perpetuated." *Id.* at 1089 (internal citations omitted).

In addition to clarifying the scope of the "continuing harm" theory, the facts of the *Litz* case are substantially similar to those alleged by SPS here. The *Litz* plaintiff claimed that the continued "discharge of ground and surface water onto" her property constituted a violation of her Town's duty to control that discharge; a duty which was "ongoing and continuous." *Litz*, 76 A.3d at 1090–91. The *Litz* court agreed, noting that "[n]othing in the Complaint indicates that the Town's allegedly negligent actions ceased before March 2007, three years before Litz filed her cause of action in March 2010." *Id.* at 1091 (noting "that the contamination problems continued over a long period of time"). Drawing all reasonable inferences in the plaintiff's favor, the *Litz* court held that the plaintiff's claim was not barred by the statute of limitations and denied the defendant's motion to dismiss. I reach the same result here. SPS alleges a continuous discharge of hazardous chemicals including benzene and claims that this ongoing discharge is also a continuous violation of SP Terminal's duty to control and stop it. Because the discharge was ongoing when SPS filed its complaint, its claims are within the statute of limitations.

**III.    SP Terminal is Only Liable for a Portion of SPS's Claimed Damages.**

Finally, SP Terminal argues that it can only be liable for part of the damages sought by SPS. I agree. Although SPS's *claims* are viable, the damages it can recover are limited by the statute of limitations, issue preclusion, and the fact that SP Terminal did not purchase the Steel Mill Site until 2014.

SPS claims the same damages in this case as it did against the *Severstal* defendants. Paragraph 31 of the SAC, seeking $700,000 "to investigate environmental conditions at the Shipyard Site," is identical to ¶ 30 in the *Severstal* complaint filed on September 17, 2010.

Similarly, ¶ 38 of the SAC, seeking $700,000 for "the cost of installing and operating the wastewater treatment system" and "an additional $20,000 per month in operating and maintenance costs" is identical to ¶ 36 in the *Severstal* complaint. As for the four state-law claims that SP Terminal now seeks to dismiss, SPS also uses identical language—"remediating and decontaminating the Shipyard Site, together with the diminution in value of the Shipyard Site arising as a result of the contamination." Assuming that the monetary values are incorporated into the individual counts, SPS cannot recover the full amount it seeks.

     First, the statute of limitations. The *Litz* court—while reaffirming the "continuing harm" theory for tolling the statute of limitations regarding legal claims—simultaneously held that "damages for such causes of action are limited to those occurring within the 'three year period prior to the filing of the action.'" *Litz*, 76 A.3d at 1089 (quoting *Shell Oil Co. v. Parker*, 291 A.2d 64, 67 (Md. 1972)). Applying that rule to this case, SPS cannot recover damages for conduct that occurred before February 28, 2011—three years prior to filing the complaint. That necessarily reduces the amount SPS can claim for investigating "environmental conditions at the Shipyard Site," ¶ 31, because SPS had been investigating the Site as early as 2007. As for the wastewater treatment system, ¶ 38, based on the SPS's allegations it seems likely that the system had to be operational when the revised NPDES permit became effective on February 1, 2010. (ECF No. 35 ¶¶ 34–35). The economic injury resulting from building that system, therefore, accrued outside of the three-year window that SPS is limited to under *Litz* and *Shell*.

     Second, even if the statute of limitations did not operate to bar part of SPS's claimed damages, the settlement of the prior *Severstal* case would. As described above, SPS sought to recover identical damages. After I dismissed its state-law claims for falling outside the statute of limitations, the parties eventually settled. On July 31, 2013 I issued a Local Rule 111 order that

dismissed the case without prejudice unless neither side moved to reopen within 30 days (later extended to September 16, 2013). Because SPS did not move to re-open, my order dismissing its negligence, trespass, nuisance, and strict liability claims was final. Accordingly, SPS is barred by issue preclusion from being compensated for those violations, including investigating the hazardous discharges and building the wastewater treatment system.

Finally, applying those principles to SP Terminal, it cannot be liable for damages that occurred prior to its purchase of the Steel Mill Site in 2014. Based on SPS's allegations, SP Terminal can only be liable for a proportion of the investigation costs (assuming they were on-going as of SP Terminal's purchase) and also the on-going monthly cost of operating and maintaining the wastewater treatment system. SPS of course has the burden to ultimately substantiate those damages.

## CONCLUSION

For the foregoing reasons, SP Terminal's partial motion to dismiss is denied.


    08/07/2015                                              /s/
Date                                                           J. Frederick Motz
                                                                 United States District Judge